**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROCHESTER DRUG CO-OPERATIVE, INC., on behalf of itself and all others similarly situated, 50 Jet View Drive, Rochester, NY 14624,<br><br>Plaintiff,<br><br>v.<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY, WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., GALEN (CHEMICALS) LTD., and BARR PHARMACEUTICALS, INC.<br><br>Defendants. | Civil Action No: 1:05-CV-02257-CKK<br><br>Judge Colleen Kollar-Kotelly<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT BARR PHARMACEUTICAL'S
ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant BARR PHARMACEUTICALS, INC. ("Barr") hereby responds to the allegations of plaintiff ROCHESTER DRUG CO-OPERATIVE, INC. ("Plaintiff") in its purported Class Action Complaint ("Complaint") by denying it engaged in any unlawful or unfair methods of competition in or affecting commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Barr further responds to each paragraph of the Complaint as set forth below. Any allegation in the Complaint not specifically addressed below is hereby denied.

1.     This is a civil antitrust action seeking treble damages arising out of the unlawful actions of defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd, Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Galen (Chemicals) Ltd. (collectively "Warner Chilcott"), and its co-conspirator Barr Pharmaceuticals, Inc. ("Barr"). All defendants will be referred to collectively as "Defendants."

**ANSWER:**    Barr admits that plaintiff's Complaint purports to bring an antitrust action

seeking treble damages. Barr denies it has engaged in any unlawful activities. Barr lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 1 of the Complaint.

2.     Warner Chilcott and Barr are sellers of prescription drugs. They unlawfully agreed not to compete for sales of the oral contraceptive, Ovcon® ("Ovcon") and its AB-rated generic equivalents (collectively the "Ovcon molecule"), and to allocate the entire United States market for the Ovcon molecule to Warner Chilcott.

**ANSWER:**    Barr admits that it is engaged in the business of, among other things,

manufacturing and marketing pharmaceutical products. Barr denies the remaining allegations

contained in Paragraph 2 of the Complaint.

3.     Warner Chilcott has sold Ovcon since 2000. Ovcon is a frequently prescribed oral contraceptive used to prevent pregnancy. Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell an AB-rated generic version of Ovcon in competition with Warner Chilcott's branded Ovcon.

**ANSWER:**    Barr admits that Ovcon is an oral contraceptive used to prevent pregnancy.

Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 3 of the Complaint.

4.     Prior to the challenged agreement, Barr had planned to compete with Warner Chilcott by selling Barr's substantially lower-priced generic Ovcon once Barr received final FDA approval. Both Warner Chilcott and Barr predicted that the entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher priced branded Ovcon sales by capturing approximately 50 percent of Ovcon's business in the first year alone.

**ANSWER:**    Barr denies the allegations contained in Paragraph 4 of the Complaint,

except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon

if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making

a generic Ovcon commercially available.

5.    To forestall this threat and to protect its Ovcon sales and profits, Warner Chilcott entered into an agreement with Barr preventing entry of Barr's generic Ovcon into the United States market, at least since April 2004.  In exchange for Barr's agreement to keep its generic Ovcon off the market for 5 (five) years, Warner Chilcott paid Barr $20 million (the "Agreement").

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 5 of the

Complaint.


6.    As alleged below, Defendants' Agreement is a naked restraint of trade among horizontal competitors, and accordingly, constitutes a *per se* violation of Section 1 of the Sherman Act.  As a result of the Agreement, there is no generic competition for Ovcon, which could have begun to occur in April 2004 when Barr received final FDA approval to market its AB-rated generic version of Ovcon. Absent Defendants' illegal Agreement, Barr would have sold its generic version of Ovcon in the United States since at least April 2004, at prices significantly lower than the price of brand-name Ovcon. Thus, Defendants' Agreement caused Plaintiff and other similarly situated entities that have purchased Ovcon directly from Warner Chilcott, to incur substantial overcharges because, absent the Agreement, these entities would have: (a) substituted Barr's cheaper genetic version of Ovcon for all or much of their purchases of brand-name Ovcon; and/or (b) paid substantially less for brand-name Ovcon.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 6 of the

Complaint.

7.    This Class Action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including a reasonable attorneys' fee, for the injuries sustained by Plaintiff and members of the Class resulting from violations by the Defendants, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1. The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 13337(a) and 15 U.S.C. § 15.

**ANSWER:**    Paragraph 7 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr denies each and every allegation

contained in Paragraph 7 of the Complaint and specifically denies that Plaintiff is entitled to any

relief whatsoever.

3

8.    The Defendants named herein are found or transact business within this district; and the interstate trade and commerce, hereinafter described, was carried out, in substantial part, in this district. Venue, therefore, is appropriate within this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

**ANSWER:**    Paragraph 8 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 8 of

the Complaint.

9.    Plaintiff RDC is a pharmaceutical wholesaler located at 50 Jet View Drive, Rochester, New York. RDC purchased the prescription drug Ovcon directly from one or more named Defendants during the Class Period, as defined below.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 9 of the Complaint.

10.    Defendant Warner Chilcott Public Limited Company (formerly Galen Holdings PLC), is a privately-owned, for-profit company organized, existing and doing business under and by virtue of the laws of Northern Ireland, with its office and principal place of business located at Old Belfast Road, Millbrook, Larne, BT40 2SH, County Antrim, United Kingdom.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 10 of the Complaint.

11.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 11 of the Complaint.

12.    Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company T11, Ltd. and is the direct 100% shareholder of Warner Chilcott (US) Inc. Warner Chilcott Corporation is organized, exists, and does business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 12 of the Complaint.

13.    Defendant Warner Chilcott (US) Inc, a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (US) Inc., is organized, exists, and does business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07966-2129.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 13 of the Complaint.

14.    Galen (Chemicals) Ltd, is organized, exists,, and does business under and by virtue of the laws of the Republic of Ireland.  Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings Company III, Ltd.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 14 of the Complaint.

15.    Defendant Barr is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware.  Barr's office and principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.

**ANSWER:**    Barr admits that it is a corporation organized under the laws of the State of Delaware.  Barr denies the remaining allegations contained in Paragraph 15 of the Complaint.

16.    Plaintiff brings this action on behalf of itself and, under Rule 23(b)(3) of the Federal Rules of Civil Procedure, as representative of a class defined as follows:

> All persons or entities who have directly purchased Ovcon from any Warner Chilcott entity at any time during the period of April 22, 2004, through and including the present (the "Class"). Excluded from the Class are Defendants and their officers, directors, management and employees, subsidiaries or affiliates.

**ANSWER:**    Paragraph 16 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation

contained in Paragraph 16 of the Complaint and further denies that this suit can be litigated as a

class action under Rule 23(b)(3) or any other rule.

17.    Members of the Class are so numerous that joinder of all members is impracticable. Class members include wholesalers, hospitals, health maintenance organizations, and/or retail chain drug stores. Upon information and belief, the class includes one-hundred or more members, and the exact identity of Class members is ascertainable from the records of Defendants.

**ANSWER:**    Paragraph 17 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17

of the Complaint.

18.    Plaintiff's claims are typical of the Class. Plaintiff and all members of the Class have incurred overcharges because they were deprived of the ability to substitute a cheaper generic version of Ovcon and/or pay substantially lower prices on their purchases of Ovcon as a result of the wrongful exclusion of Barr's AB-rated generic Ovcon product.

**ANSWER:**    Paragraph 18 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr denies each and every allegation

contained in Paragraph 18 of the Complaint.

19.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiffs interests are coincident with, and not antagonistic to, those of the Class.

**ANSWER:**    Paragraph 19 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr denies each and every allegation

contained in Paragraph 19 of the Complaint.

20.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex antitrust class actions, particularly antitrust class action litigation relating to the pharmaceutical industry.

**ANSWER:**    Paragraph 20 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr lacks knowledge or information

6

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 20 of the Complaint.

21.     Questions of law and fact common to the members of the Class predominate over questions, if any, that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class.

**ANSWER:**     Paragraph 21 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr denies each and every allegation contained in Paragraph 21 of the Complaint.

22.     Questions of law and fact common to the Class include:

a.     the existence and duration of the contract, combination or conspiracy in restraint of trade alleged herein;

b.     whether the contract, combination or conspiracy alleged herein constitutes a *per se* violation of Section 1 of the Sherman Act;

c.     if the contract, combination or conspiracy alleged herein does not constitute a *per se* violation, whether it otherwise represents an unreasonable restraint of trade under Section 1 of the Sherman Act;

d.     whether the activities of Defendants as alleged herein have substantially affected interstate commerce;

e.     whether, and to what extent, the conduct of Defendants caused antitrust injury to the business or property of Plaintiff and the members of the Class, and if so, the appropriate measure of damages.

**ANSWER:**     Paragraph 22 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 22 of the Complaint.

23.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress

on claims that it might not be practicable to pursue individually, substantially outweigh any difficulties; that may arise in management of this class action.

**ANSWER:**    Paragraph 23 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, Barr denies that this suit can be maintained as a class action.   Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the Complaint.

24.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 24 of the Complaint, but denies that this suit can be maintained as a class action.

25.    In 1984, Congress enacted the Drug, Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (the "Hatch-Waxman Amendments"), amending the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301-392.  Under the Food, Drug and Cosmetics Acts, pioneer drug manufacturers must obtain FDA approval for any new drug by filing a New Drug Application ("NDA"), which requires the submission of specific data concerning the safety and effectiveness of the drug, as well as any information on applicable patents.

**ANSWER:**    Paragraph 25 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, Barr admits that the Drug Price Competition and Patent Term Restoration Act of 1984 establishes certain procedures relating to generic pharmaceuticals.   Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 25 of the Complaint.

26.    A company seeking FDA approval to market a new drug (i.e., a branded drug) must file a New Drug Application (NDA) demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b).

**ANSWER:**    Paragraph 26 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, Barr admits that, among other things,

a drug manufacturer must file a New Drug Application with the FDA and demonstrate that a new

drug is safe and effective for its intended use.

27.    An "AB-rated" drug is one that the FDA has determined to be bioequivalent to a
branded drug.  A generic drug, is considered bioequivalent to a branded drug if it contains the
same active pharmaceutical ingredient as the branded drug, and if there is no significant
difference in the formulation, quality and effectiveness of the two drugs. 21 U.S.C. §
3550)(8)(B).

**ANSWER:**    Paragraph 27 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr admits that 21 U.S.C. §

355(j)(8)(B) (2005) contains provisions defining "AB-rated" generic drugs.

28.    A company seeking to market an "AB-rated" generic version of a branded drug
may file an Abbreviated New Drug Application (ANDA) with the FDA. 21 U.S.C. § 355(j).

**ANSWER:**    Paragraph 28 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr admits that a company seeking to

market an "AB-rated" pharmaceutical may file an ANDA with the FDA.

29.    Typically, when generic versions of brand-name drugs finally are permitted on the
market by the FDA, they are priced significantly less than their brand-name counterparts.  As a
result, upon generic entry, direct purchasers (Class members) rapidly substitute generic versions
of the drug for some or all of their purchases. As more generic manufacturers enter the market,
prices for generic versions of a drug predictably plunge even further. This price competition
enables all direct purchasers of the drugs to (a) purchase generic versions of the drug at
substantially lower prices, and/or (b) purchase the brand-name drug at a reduced price. Generic
drugs, after their introduction, promptly capture a significant share of their branded counterparts'
sales, causing a significant reduction of the branded drug's unit and dollar sales. Consequently,
brand-name drug manufacturers have a keen financial interest in delaying the onset of generic
competition, and purchasers experience substantial price inflation from that from that delay.

**ANSWER:**    Barr admits that in many instances generic drugs may be priced below the

corresponding brand-name version of the drug, but that each drug must be considered

individually to observe pricing trends.  Barr lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in Paragraph 29 of the Complaint.

30.    Ovcon was originally approved by the FDA in 1976, and it is not subject to patent
protection. Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company and/or its

affiliates or subsidiaries on January 26, 2000. As part of the acquisition, Bristol-Myers Squibb Company agreed to supply (and has supplied) Ovcon to Warner Chilcott.

**ANSWER:**    Barr admits that it is unaware of any claims of patent protection on Ovcon.

Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 30 of the Complaint.

31.    Ovcon's net U.S. dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 31 of the Complaint.

32.    Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 32 of the Complaint.

33.    Warner Chilcott has sold Ovcon, at prices substantially above Warner Chilcott's cost of acquiring and distributing the product.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 33 of the Complaint.

34.    Ovcon is highly profitable for Warner Chilcott.  For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon in the United States were approximately $71.5 million.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 34 of the Complaint.

35.    In September 2001, Barr filed a Paragraph I Certification ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon, on the basis that no patent for the pioneer drug (Ovcon) had been listed in the FDA's publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," known as the "Orange Book."

**ANSWER:**    Barr admits that it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon.    Barr denies the remaining allegations contained in Paragraph 35 of the Complaint.

36.    In January 2003, as reported by several news publications, including the Guardian (UK), Barr publicly announced its intention to market generic Ovcon by the end of 2003.

**ANSWER:**    Barr denies the allegations contained in Paragraph 36, except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

37.    Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER:**    Barr denies the allegations contained in Paragraph 37 of the Complaint.

38.    Barr projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's branded Ovcon sales within the first year of introduction.

**ANSWER:**    Barr admits that it made projections regarding the sales of a generic Ovcon product.    Barr denies the remaining allegations of Paragraph 38 of the Complaint.

39.    Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.

40.    Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period subsequent to generic entry.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 40 of the Complaint.

41.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred.  Warner Chilcott's strategy was to convert Ovcon patients to Ovcon Chewable, and to stop selling Ovcon once conversion was substantially complete. This is known as a "line extension" strategy.  The January 17, 2003 publication of the Irish Times quotes a Galen spokesman as saying:  "At some stage there was going to be generic competition to Ovcon, which is why we took the step of filing the line extension."

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 41 of the Complaint.

42.    Prescriptions for Ovcon Chewable would not be able to be filled at the pharmacy with a generic Ovcon product (absent express approval of the patient's physician), because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 42 of the Complaint.

43.    By mid-2003, however, Warner Chilcott's "switch' strategy to protect its Ovcon revenues -- by converting customers to Ovcon Chewable before generic Ovcon entry -- was in jeopardy.  Warner Chilcott's planned Ovcon Chewable had not obtained FDA approval by the time that Barr's generic Ovcon entry appeared imminent.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 43 of the Complaint.

44.    In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 44 of the Complaint.

45.    By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 45 of the Complaint.

46.    In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER:**    Barr denies the allegations contained in Paragraph 46 of the Complaint, except admits that in August 2003 representatives of Barr and Warner Chilcott discussed a number of possible business transactions.

47.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent. According to the letter of intent, Warner Chilcott would pay Barr $20 million in exchange for Barr's agreement not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval. Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott. so requested.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 47 of the Complaint, except admits that on September 10, 2003, Barr and Warner Chilcott executed a letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into a five-year exclusive license to Barr's Ovcon ANDA and a related supply agreement.

48.    On March 24, 2004, the Defendants signed their Final Agreement implementing the letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

**ANSWER:**    Barr admits that on March 24, 2004, Barr and Warner Chilcott executed an option agreement implementing the terms of the parties' letter of intent, and further admits that Barr was paid $1 million in consideration for the option by Warner Chilcott.

49.    Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining, $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 49 of the Complaint, except admits Warner Chilcott exercised its option to a five-year exclusive license to Barr's Ovcon ANDA in May 2004.

50.    In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms, including setting a premium price for Barr's generic Ovcon of up to 200% of Barr's manufacturing costs.  The ability to purchase supply from Barr would arise however, only after Barr received final FDA approval for its generic Ovcon.  Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 50 of the Complaint, except admits that Barr and Warner Chilcott entered into a supply agreement with specified payment terms, and further admits that Barr could not supply Warner Chilcott with generic Ovcon under its ANDA prior to receiving FDA approval.

51.    On April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon.

**ANSWER:**    Barr admits the allegations contained in Paragraph 51 of the Complaint.

52.    But for the agreement, upon receiving final FDA approval for its generic Ovcon ANDA, Barr would have marketed generic Ovcon in the United States immediately.

**ANSWER:**    Barr denies each and every allegation of Paragraph 52 of the Complaint.

53.    On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER:**    Barr admits that in April 2004 it publicly contemplated launching a generic Ovcon if Warner Chilcott chose not to exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

54.    On May 6, 2004, Warner Chilcott exercised the exclusive license Option under the Final Agreement by paying Barr $19 million.

**ANSWER:**    Barr admits that on or about May 6, 2004, Warner Chilcott exercised the option for an exclusive license and supply, and further admits that Warner Chilcott paid Barr $19 million under the Final Agreement.

55.    Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase Ovcon supply solely from Bristol-Myers Squibb Co., until about May 2005.

**ANSWER:**    Barr admits Warner Chilcott began purchasing Ovcon from Barr in May 2005.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 55 of the Complaint.

56.    Under the terms of the Final Agreement Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009. Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 56 of the Complaint, except admits that until approximately May 2009 Barr is obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon.

57.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon, and led to a significant reduction in the average price Plaintiff and the Class paid for Ovcon molecule products.

**ANSWER:**    Barr denies each and every allegation of Paragraph 57 of the Complaint.

58.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

**ANSWER:**    Barr admits it has not sold generic Ovcon in the United States.  Barr denies the remaining allegations contained in Paragraph 58 of the Complaint.

59.    As of the date of this Complaint, Barr remains the only company that has received approval from the FDA to make and sell an AB-rated generic version of Ovcon.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 59 of the Complaint.

60.    On November 7, 2005, the FTC filed a complaint against Defendants in the United States District Court for the District of Columbia, seeking to permanently enjoin Defendants from continuing to engage in their unlawful conduct.  Twenty-one states and the District of Columbia have filed a related complaint in federal court.

**ANSWER:**    Barr admits that on or about November 7, 2005 the FTC filed a complaint against Barr and Warner Chilcott in the United States District Court for the District of Columbia and admits that the FTC seeks injunctive relief.  Barr further admits that several states and the District of Columbia have filed a related complaint in the United States District Court for the District of Columbia.   Barr denies the remaining allegations contained in Paragraph 60 of the Complaint.

61.    At all material times, Ovcon was marketed by Warner Chilcott, shipped across state lines and sold to customers located outside the state of its manufacture.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 61 of the Complaint.

62.    During the relevant time period, in connection with the purchase and sale of Ovcon, monies as well as contracts, bills and other forms of business communication and transactions were transmitted in a continuous and uninterrupted flow across state lines.

**ANSWER:**    Paragraph 62 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 62 of the Complaint.

63.    During the relevant time period, various devices were used to effectuate the conspiracy alleged herein, including the United States mail, interstate and foreign travel. and interstate and foreign telephone commerce.  The activities of Defendants as charged in this complaint were within the flow of, and have substantially affected, interstate commerce.

**ANSWER:**    Paragraph 63 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 63 of the Complaint.

64.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

a.    The sales of Ovcon and any AB-rated generic equivalent have been allocated between Warner Chilcott and Bart, with a portion of Warner Chilcott's supra-competitive profits being allocated to Barr, in exchange for its agreement not to compete with Warner Chilcott,

b.    Prices for Ovcon and any AB-rated generic equivalent have been fixed, raised, maintained or stabilized at artificially high and non-competitive levels,

c.    Class members have been deprived of the benefits of free and open competition in their purchases, including the ability to purchase a competing, less expensive generic version of Ovcon; and

d.    Competition in the production and sale of Ovcon and any AB-rated generic equivalent has been restrained, suppressed and eliminated.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 64 of the Complaint, including sub-parts a. through d.

65.    During the relevant period, members of the Class purchased substantial amounts of Ovcon.  As a result of the illegal conduct of Defendants, members of the Class were compelled to pay, and did pay, artificially inflated prices for the Ovcon molecule.  Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal Agreement, combination or conspiracy alleged herein, because Class members were deprived of the opportunity to: (1) pay lower prices for the generic version of Ovcon; (2) pay lower prices for their Ovcon molecule requirements by switching more of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand drug Ovcon.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 65 of the Complaint.

17

66.    Plaintiff incorporates by reference the allegations set forth above, as if fully set forth as herein.

**ANSWER:**    Barr incorporates and realleges by this reference each and all of the matters set forth in its answers to Paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.    Beginning on or about September 10, 2003, when Defendants executed their letter of intent, Defendants engaged in a continuing agreement, combination or conspiracy in unreasonable restraint of trade and commerce in violation of Section I of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 67 of the Complaint.

68.    The Defendants' Agreement has included concerted action and undertakings between Defendants for the purpose and effect of:  (1) eliminating competition between Warner Chilcott and Barr in the sale of Ovcon molecule products, (2) allocating a portion of Warner Chilcott's supra-competitive profits in the sale of Ovcon to Barr in exchange for Barr's agreement not to sell its generic version of Ovcon for five years; (3) fixing, raising, maintaining, or stabilizing the price of branded Ovcon at supra-competitive levels; and (4) depriving Plaintiff and the Class of the ability to purchase cheaper competitive generic versions of Ovcon.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 68 of the Complaint.

69.    For the purpose of formulating and effectuating their contract, combination or conspiracy, Defendants performed various acts, as alleged herein, including the following:

a.    entering into an illegal Agreement by which Barr agreed not to sell its generic Ovcon in U.S. commerce in exchange for sharing Warner Chilcott's supra-competitive profits, and

b.    depriving direct purchasers of the ability to purchase Ovcon generic equivalents, at true competitive prices;

c.    causing Class members to pay more for Ovcon molecule products than they otherwise would have.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 69 of the Complaint, including sub-parts a. through  c.

70.    The acts done by each of the Defendants as part of, and in furtherance of, their contract combination or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 70 of the Complaint.

71.    Defendants' illegal contract, combination or conspiracy to prevent the introduction into the U.S. marketplace of a competing generic version of Ovcon resulted in Plaintiff and the Class paying more than they would have paid for Ovcon and its AB-rated generic equivalents, absent Defendants' illegal conduct.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 71 of the Complaint.

72.    Defendants' contract combination or conspiracy is a *per se* violation of Section I of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 72 of the Complaint.

73.    In the alternative, Defendants' contract, combination or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under a "Quick Look" analysis and/or under "Rule of Reason" analysis, because its purpose and effect was to unreasonably restrain competition in the United States market for Ovcon and its generic equivalent.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 73 of the Complaint.

74.    To the extent the law requires it, the relevant geographic market is the United States and its territories.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 74 of the Complaint.

75.    To the extent the law requires it, the relevant product market is Ovcon and its AB-rated generic equivalents (the Ovcon molecule). Defendants had substantial market power in the relevant market.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 75 of the Complaint.

## DEFENSES

In addition to the foregoing responses, Barr asserts the following defenses to the claims alleged in the Plaintiff's Class Action Complaint. Barr does not assume the burden of proof on these defenses where the applicable substantive law provides otherwise.

### First Affirmative Defense

1.      Plaintiff's Complaint fails to state a claim against Barr upon which relief can be granted.

### Second Affirmative Defense

2.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### Third Affirmative Defense

3.      Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

4.      Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Affirmative Defense

5.      Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr has been reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

### Sixth Affirmative Defense

6.      Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr was reasonable in relation to the development and preservation of its business.

### Seventh Affirmative Defense

7.      Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have injured competition in any relevant market.

### Eighth Affirmative Defense

8.      Plaintiff's claims are barred, in whole or in part, because Barr's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

### Ninth Affirmative Defense

9.      Plaintiff's claims are barred, in whole or in part, because none of Barr's alleged actions have harmed competition and/or consumers.

### Tenth Affirmative Defense

10.      Plaintiff's claims are barred, in whole or in part, because Barr had no knowledge, intention, notice, or belief that Barr's actions might illegally restrain trade.  Further, Barr could not have known that its actions might illegally restrain trade.

### Eleventh Affirmative Defense

11.      Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any willful or flagrant act.

### Twelfth Affirmative Defense

12.      Plaintiff's claims are barred, in whole or in part, because Barr relied in good faith on the actions and statements of the Federal Trade Commission.

### Thirteenth Affirmative Defense

13.      Plaintiff's claims are barred, in whole or in part, because Barr did not conceal any of its actions.

### Fourteenth Affirmative Defense

14.      Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any pattern or practice of illegal activity.

### Fifteenth Affirmative Defense

15.     Plaintiff's claims are barred, in whole or in part, because Barr's actions were the result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

### Sixteenth Affirmative Defense

16.     Plaintiff's claims are barred, in whole or in part, because Barr's actions did not cause harm to the plaintiffs.

### Seventeenth Affirmative Defense

17.     Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any unfair or deceptive act or practice.

### Eighteenth Affirmative Defense

18.     Plaintiff's claims are barred, in whole or in part, for failure to allege either a proper relevant antitrust product market or a proper relevant geographic market.

### Nineteenth Affirmative Defense

19.     Plaintiff's claims are barred, in whole or in part, because Barr has no market power and Plaintiffs have failed to allege any market power.

### Twentieth Affirmative Defense

20.     Barr reserves the right to assert and rely on other applicable defenses as may become available or apparent, to amend its answer and/or defenses, and/or delete defenses that it determines to be inapplicable.

### JURY DEMAND

Barr hereby demands trial by jury on all claims so triable.

## PRAYER FOR RELIEF

Wherefore, Barr prays as follows:

1.      That the Court enter judgment for Barr;

2.      That the Court award Barr reasonable costs and expenses including but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.


Dated:  December 20, 2005                    Respectfully submitted,


                                             _____
                                             Karen N. Walker (D.C. Bar # 412137)
                                             Mark L. Kovner (D.C. Bar # 430431)
                                             Chong S. Park (D.C. Bar # 463050)

                                             KIRKLAND & ELLIS LLP
                                             655 Fifteenth Street, N.W.
                                             Washington, D.C. 20005
                                             (202) 879-5000
                                             (202) 879-5200 (fax)

                                             *Attorneys for Defendant Barr
                                             Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on December 20, 2005, the undersigned attorney caused a true and correct copy of the foregoing DEFENDANT BARR PHARMACEUTICALS' ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT in Civil Action No: 1:05-CV-02257-CKK to be served on the following counsel of record and in the manner noted.

Chong S. Park (D.C. Bar # 463050)

David U. Fierst                                        By First Class Mail
STEIN, MITCHELL & MEZINES LLP
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036
Tel: (202) 737-7777
Fax: (202) 296-8312

Daniel Berger                                         By First Class Mail
David Sorensen
Eric L. Cramer
Peter Kohn
Daniel Simons
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4671

Joshua P. Davis                                       By First Class Mail
LAW OFFICES OF JOSHUA P. DAVIS
437 Valley Street
San Francisco, CA  94131
Tel: (415) 422-6223
Fax: (415) 422-6433

Kendall S. Zylstra                                    By First Class Mail
Lyle Stamps
SCHIFFRIN & BARROWAY, LLP
280 King of Prussia Road
Radnor, PA  19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Attorneys for Plaintiff Rochester Drug Co-Operative, Inc.*