## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROCHESTER DRUG CO-OPERATIVE, INC., on behalf of itself and all others similarly situated, 50 Jet View Drive, Rochester, NY 14624,** | Civil Action No. 1:05-02257-CKK Judge Colleen Kol1ar-Kotelly |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **WARNER CHILCOTT PUBLIC LIMITED COMPANY, WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., GALEN (CHEMICALS) LTD., and BARR PHARMACEUTICALS, INC.,** | |
| **Defendants.** | |

## DEFENDANT WARNER CHILCOTT'S
## ANSWER TO CLASS ACTION COMPLAINT

Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings

Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Galen

(Chemicals), Ltd. (collectively, "Warner Chilcott") answer the allegations of Rochester Drug Co-

Operative, Inc. ("Plaintiff" or "Rochester") in its Class Action Complaint ("Complaint") as

follows:

## PLAINTIFF'S ALLEGATION

      1.     This is a civil antitrust action seeking treble damages arising out of the
unlawful actions of defendants Warner Chilcott Public Limited Company, Warner Chilcott
Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Galen

(Chemicals) Ltd. (collectively "Warner Chilcott"), and its co-conspirator Barr Pharmaceuticals, Inc. ("Barr"). All defendants will be referred to collectively as "Defendants."

**ANSWER**

Warner Chilcott states that Paragraph 1 of the Complaint is a description of Plaintiff's claims to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 1 of the Complaint.

**PLAINTIFF'S ALLEGATION**

2. Warner Chilcott and Barr are sellers of prescription drugs. They unlawfully agreed not to compete for sales of the oral contraceptive, Ovcon® 35 ("Ovcon") and its AB-rated generic equivalents (collectively, "the Ovcon molecule"), and to allocate the entire United States market for the Ovcon molecule to Warner Chilcott.

**ANSWER**

Paragraph 2 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies the allegations contained in Paragraph 2 of the Complaint, except admits that Warner Chilcott and Barr sell prescription drugs.

**PLAINTIFF'S ALLEGATION**

3. Warner Chilcott has sold Ovcon since 2000. Ovcon is a frequently prescribed oral contraceptive used to prevent pregnancy. Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell an AB-rated generic version of Ovcon in competition with Warner Chilcott's branded Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint, except admits that Warner Chilcott has sold Ovcon, an oral contraceptive, since 2000.

**PLAINTIFF'S ALLEGATION**

       4.    Prior to the challenged agreement, Barr had planned to compete with Warner Chilcott by selling Barr's substantially lower-priced generic Ovcon once Barr received final FDA approval.  Both Warner Chilcott and Barr predicted that the entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher priced branded Ovcon sales by capturing approximately 50 percent of Ovcon's business in the first year alone.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 4 of the Complaint, except denies that Warner

Chilcott predicted that a Barr generic would reduce Warner Chilcott's Ovcon sales by capturing

50 percent of the Ovcon business in the first year alone.

**PLAINTIFF'S ALLEGATION**

       5.    To forestall this threat and to protect its Ovcon sales and profits, Warner Chilcott entered into an agreement with Barr preventing entry of Barr's generic Ovcon into the United States market, at least since April 2004.  In exchange for Barr's agreement to keep its generic Ovcon off the market for 5 (five) years, Warner Chilcott paid Barr $20 million (the "Agreement").

**ANSWER**

       Warner Chilcott denies each and every allegation contained in Paragraph 5 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

       6.    As alleged below, Defendants' Agreement is a naked restraint of trade among horizontal competitors, and accordingly, constitutes a *per se* violation of Section 1 of the Sherman Act.  As a result of the Agreement, there is no generic competition for Ovcon, which could have begun to occur in April 2004 when Barr received final FDA approval to market its AB-rated generic version of Ovcon.  Absent Defendants' illegal Agreement, Barr would have sold its generic version of Ovcon in the United States since at least April 2004, at prices significantly lower than the price of brand-name Ovcon.  Thus, Defendants' Agreement caused Plaintiff, and other similarly situated entities that have purchased Ovcon directly from Warner Chilcott, to incur substantial overcharges because, absent the Agreement, these entities would

have: (a) substituted Barr's cheaper generic version of Ovcon for all or much of their purchases of brand-name Ovcon; and/or (b) paid substantially less for brand-name Ovcon.

**ANSWER**

Paragraph 6 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 6 of the Complaint.

**PLAINTIFF'S ALLEGATION**

7. This Class Action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including a reasonable attorneys' fee, for the injuries sustained by Plaintiff and members of the Class resulting from violations by the Defendants, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1. The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15.

**ANSWER**

The first sentence of Paragraph 7 of the Complaint is a description of Plaintiff's claims to which no response is required. To the extent a response is required, Warner Chilcott denies that it has engaged in any activity in violation of Section 1 of the Sherman Act, and further denies that Plaintiff is entitled to any relief whatsoever. The second sentence of Paragraph 7 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the second sentence of Paragraph 7 of the Complaint.

**PLAINTIFF'S ALLEGATION**

8. The Defendants named herein are found or transact business within this district, and the interstate trade and commerce, hereinafter described, was carried out, in

substantial part, in this district.  Venue, therefore, is appropriate within this district under 15
U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

**ANSWER**

Paragraph 8 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the

Complaint, except admits that Ovcon is sold in the District of Columbia.


**PLAINTIFF'S ALLEGATION**

9.    Plaintiff RDC is a pharmaceutical wholesaler located at 50 Jet View
Drive, Rochester, New York.  RDC purchased the prescription drug Ovcon directly from one or
more named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 9 of the Complaint, except admits that

Plaintiff RDC has purchased Ovcon from Warner Chilcott.


**PLAINTIFF'S ALLEGATION**

10.    Defendant Warner Chilcott Public Limited Company (formerly Galen
Holdings PLC), is a privately-owned, for-profit company organized, existing and doing business
under and by virtue of the laws of Northern Ireland, with its office and principal place of
business located at Old Belfast Road, Millbrook, Larne, BT40 2SH, County Antrim, United
Kingdom.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 10 of the

Complaint, except admits that Warner Chilcott Public Limited Company (formerly Galen

Holdings PLC), was a for-profit company organized, existing and doing business under and by

virtue of the laws of Northern Ireland, with its office and principal place of business located at

Old Belfast Road, Millbrook, Larne, BT40 2SH, County Antrim, Northern Ireland, United

Kingdom.

**PLAINTIFF'S ALLEGATION**

11.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 11 of the

Complaint, except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned,

for-profit enterprise organized, existing, and doing business under and by virtue of the laws of

Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12

Bermuda.

**PLAINTIFF'S ALLEGATION**

12.    Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (US) Inc.  Warner Chilcott Corporation is organized, exists, and does business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 12 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

13.    Defendant Warner Chilcott (US) Inc., a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (US) Inc., is organized, exists, and does business

under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 13 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

14.     Galen (Chemicals) Ltd., is organized, exists, and does business under and by virtue of the laws of the Republic of Ireland. Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings Company III, Ltd.

**ANSWER**

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 14 of the Complaint.  Warner Chilcott denies the remaining allegations contained in

Paragraph 14 of the Complaint, except admits that Galen (Chemicals) Limited is directly or

indirectly owned by Warner Chilcott Holdings Company III, Ltd.

**PLAINTIFF'S ALLEGATION**

15.     Defendant Barr is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware.  Barr's office and principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 15 of the Complaint.

**PLAINTIFF'S ALLEGATION**

16.     Plaintiff brings this action on behalf of itself and, under Rule 23(b)(3) of the Federal Rules of Civil Procedure, as representative of a class defined as follows:

All persons or entities who have directly purchased Ovcon from
any Warner Chilcott entity at any time during the period of April
22, 2004, through and including the present (the "Class").
Excluded from the Class are Defendants and their officers,
directors, management and employees, subsidiaries or affiliates.

**ANSWER**

Paragraph 16 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies that Plaintiff is entitled to

any relief whatsoever.  Warner Chilcott further denies that this suit can be litigated as class

action under Rule 23 of the Federal Rules of Civil Procedure or any other rule.

**PLAINTIFF'S ALLEGATION**

17.    Members of the Class are so numerous that joinder of all members is
impracticable.  Class members include wholesalers, hospitals, health maintenance organizations,
and/or retail chain drug stores.  Upon information and belief, the Class includes one-hundred or
more members, and the exact identity of Class members is ascertainable from the records of
Defendants.

**ANSWER**

Paragraph 17 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17

of the Complaint.

**PLAINTIFF'S ALLEGATION**

18.    Plaintiff's claims are typical of the Class.  Plaintiff and all members of the
Class have incurred overcharges because they were deprived of the ability to substitute a cheaper
generic version of Ovcon and/or pay substantially lower prices on their purchases of Ovcon as a
result of the wrongful exclusion of Barr's AB-rated generic Ovcon product.

**ANSWER**

Paragraph 18 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 18 of the Complaint, and denies the remaining allegations contained in Paragraph 18 of the Complaint.

**PLAINTIFF'S ALLEGATION**

19.     Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class

**ANSWER**

Paragraph 19 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 19 of the Complaint.

**PLAINTIFF'S ALLEGATION**

20.     Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex antitrust class actions, particularly antitrust class action litigation relating to the pharmaceutical industry.

**ANSWER**

Paragraph 20 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 20 of the Complaint

**PLAINTIFF'S ALLEGATION**

21.     Questions of law and fact common to the members of the Class predominate over questions, if any, that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class.

**ANSWER**

Paragraph 21 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 21 of the Complaint.

**PLAINTIFF'S ALLEGATION**

22.     Questions of law and fact common to the Class include:

(a)     the existence and duration of the contract, combination or conspiracy in restraint of trade alleged herein;

(b)     whether the contract, combination or conspiracy alleged herein constitutes a *per se* violation of Section 1 of the Sherman Act;

(c)     if the contract, combination or conspiracy alleged herein does not constitute a *per se* violation, whether it otherwise represents an unreasonable restraint of trade under Section 1 of the Sherman Act;

(d)     whether the activities of Defendants as alleged herein have substantially affected interstate commerce;

(e)     whether, and to what extent, the conduct of Defendants caused antitrust injury to the business or property of Plaintiff and the members of the Class, and if so, the appropriate measure of damages.

**ANSWER**

Paragraph 22 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 22 of the Complaint.

**PLAINTIFF'S ALLEGATION**

23.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

**ANSWER**

Paragraph 23 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies that a class action is a superior method for the fair and efficient adjudication of this controversy, and further denies that a class action is the proper vehicle for this action.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the Complaint.

**PLAINTIFF'S ALLEGATION**

24.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**ANSWER**

Paragraph 24 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 24 of the Complaint.

**PLAINTIFF'S ALLEGATION**

25.    In 1984, Congress enacted the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417,98 Stat. 1585 (1984) (the "Hatch-Waxman Amendments"), amending the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301-392. Under the Food, Drug, and Cosmetics Act, pioneer drug manufacturers must obtain FDA approval for any new drug by filing a New Drug Application ("NDA"), which requires the submission of specific data concerning the safety and effectiveness of the drug, as well as any information on applicable patents.

**ANSWER**

Paragraph 25 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301-92, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), Pub. L. No. 98-417, 98 Stat. 1585 (1984), has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

26.    A company seeking FDA approval to market a new drug (i.e., a branded drug) must file a New Drug Application (NDA) demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b).

**ANSWER**

Paragraph 26 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

27.    An "AB-rated" drug is one that the FDA has determined to be bioequivalent to a branded drug. A generic drug is considered bioequivalent to a branded drug if it contains the same active pharmaceutical ingredient as the branded drug, and if there is no significant difference in the formulation, quality and effectiveness of the two drugs. 21 U.S.C. § 355(j)(8)(B).

**ANSWER**

Paragraph 27 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals, but denies that the Hatch-Waxman Act is applicable to this case.

**PLAINTIFF'S ALLEGATION**

28.    A company seeking to market an "AB-rated" generic version of a branded drug may file an Abbreviated New Drug Application (ANDA) with the FDA. 21 U.S.C. § 355(j).

**ANSWER**

Paragraph 28 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals.

**PLAINTIFF'S ALLEGATION**

29.    Typically, when generic versions of brand-name drugs finally are permitted on the market by the FDA, they are priced significantly less than their brand-name counterparts. As a result, upon generic entry, direct purchasers (Class members) rapidly substitute generic versions of the drug for some or all of their purchases. As more generic manufacturers enter the market, prices for generic versions of a drug predictably plunge even further. This price competition enables all direct purchasers of the drugs to: (a) purchase generic versions of the drug at substantially lower prices, and/or (b) purchase the brand-name drug at a reduced price. Generic drugs, after their introduction, promptly capture a significant share of their branded counterparts' sales, causing a significant reduction of the branded drug's unit and dollar sales. Consequently, brand-name drug manufacturers have a keen financial interest in delaying the onset of generic competition, and purchasers experience substantial price inflation from that from that delay.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 29 of the Complaint.


**PLAINTIFF'S ALLEGATION**

30.    Ovcon was originally approved by the FDA in 1976, and it is not subject
to patent protection.  Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company
and/or its affiliates or subsidiaries on January 26, 2000.  As part of the acquisition, Bristol-Myers
Squibb Company agreed to supply (and has supplied) Ovcon to Warner Chilcott.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 30 of the

Complaint, except denies that Bristol-Myers Squibb Company ("BMS") has ever adequately

supplied Ovcon to Warner Chilcott, and further denies that BMS has continued to supply Ovcon

to Warner Chilcott.


**PLAINTIFF'S ALLEGATION**

31.    Ovcon's net U.S. dollar sales have more than doubled since 2000, even as
Warner Chilcott has raised Ovcon's price.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 31 of the

Complaint, except admits that Ovcon's net sales have more than doubled since 2000, and further

admits that Ovcon's price has risen.


**PLAINTIFF'S ALLEGATION**

32.    Ovcon is, and has been, one of Warner Chilcott's highest revenue-
producing products.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 32 of the Complaint.

**PLAINTIFF'S ALLEGATION**

33.    Warner Chilcott has sold Ovcon at prices substantially above Warner Chilcott's cost of acquiring and distributing the product.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 33 of the Complaint, except admits that Warner Chilcott sells Ovcon at a price above its cost.

**PLAINTIFF'S ALLEGATION**

34.    Ovcon is highly profitable for Warner Chilcott. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon in the United States were approximately $71.5 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 34 of the Complaint, except admits that Warner Chilcott earns a profit on its Ovcon sales, and further admits that for the twelve months ending September 30, 2004 Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**PLAINTIFF'S ALLEGATION**

35.    In September 2001, Barr filed a Paragraph I Certification ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon, on the basis that no patent for the pioneer drug (Ovcon) had been listed in the FDA's publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," known as the "Orange Book."

15

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 35 of the Complaint.


**PLAINTIFF'S ALLEGATION**

        36.     In January 2003, as reported by several news publications, including the
Guardian (UK), Barr publicly announced its intention to market generic Ovcon by the end of
2003.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 36 of the Complaint.


**PLAINTIFF'S ALLEGATION**

        37.     Barr planned to price generic Ovcon at approximately 30 percent less than
the price that Warner Chilcott charges for branded Ovcon.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 37 of the Complaint.


**PLAINTIFF'S ALLEGATION**

        38.     Barr projected that its generic Ovcon would capture approximately 50
percent of Warner Chilcott's branded Ovcon sales within the first year of introduction.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 38 of the Complaint.

**PLAINTIFF'S ALLEGATION**

    39. Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon.

**ANSWER**

    Warner Chilcott denies each and every allegation contained in Paragraph 39 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

    40. Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period subsequent to generic entry.

**ANSWER**

    Warner Chilcott denies each and every allegation contained in Paragraph 40 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

    41. Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred.  Warner Chilcott's strategy was to convert Ovcon patients to Ovcon Chewable, and to stop selling Ovcon once conversion was substantially complete.  This is known as a "line extension" strategy.  The January 17, 2003 publication of the Irish Times quotes a Galen spokesman as saying:  "At some stage there was going to be generic competition to Ovcon, which is why we took the step of filing the line extension."

**ANSWER**

    Warner Chilcott denies the allegations contained in the first two sentences of

Paragraph 41 of the Complaint, except admits that Warner Chilcott has developed a new,

innovative, patented product, Ovcon Chewable.  Warner Chilcott denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 41 of the Complaint.

**PLAINTIFF'S ALLEGATION**

42.     Prescriptions for Ovcon Chewable would not be able to be filled at the pharmacy with a generic Ovcon product (absent express approval of the patient's physician), because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 42 of the Complaint.

**PLAINTIFF'S ALLEGATION**

43.     By mid-2003, however, Warner Chilcott's "switch" strategy to protect its Ovcon revenues -- by converting customers to Ovcon Chewable before generic Ovcon entry -- was in jeopardy.  Warner Chilcott's planned Ovcon Chewable had not obtained FDA approval by the time that Barr's generic Ovcon entry appeared imminent.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 43 of the

Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.

**PLAINTIFF'S ALLEGATION**

44.     In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 44 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

45.    By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 45 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

46.    In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 46 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

47.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent.  According to the letter of intent, Warner Chilcott would pay Barr $20 million in exchange for Barr's agreement not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 47 of the

Complaint, except admits that on September 10, 2003 Warner Chilcott and Barr executed a letter

of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms

thereof.

**PLAINTIFF'S ALLEGATION**

48.     On March 24, 2004, the Defendants signed their Final Agreement implementing the letter of intent.  Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 48 of the

Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on

March 24, 2004, and further admits that Warner Chilcott paid Barr $1 million in consideration

for the option.  Warner Chilcott respectfully refers the Court to the option agreement for the

terms thereof.

**PLAINTIFF'S ALLEGATION**

49.     Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee, for five years.  The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 49 of the

Complaint, except admits that it entered into an option agreement with Barr.  Warner Chilcott

respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

50.     In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms, including setting a premium price for Barr's generic Ovcon of up to 200% of Barr's manufacturing costs.  The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 50 of the

Complaint, except admits that Warner Chilcott and Barr entered into a supply agreement, and

further admits that Barr could not supply Warner Chilcott with Ovcon prior to receiving FDA

approval.  Warner Chilcott respectfully refers the Court to the supply agreement for the terms

thereof.

**PLAINTIFF'S ALLEGATION**

51.    On April 22, 2004, the FDA approved Barr's ANDA to produce and
market generic Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 51 of the Complaint.

**PLAINTIFF'S ALLEGATION**

52.    But for the agreement, upon receiving final FDA approval for its generic
Ovcon ANDA, Barr would have marketed generic Ovcon in the United States immediately.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 52 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon in the United States upon receiving final FDA

approval.

**PLAINTIFF'S ALLEGATION**

53.    On April 23, 2004, Barr publicly announced its intention to market generic
Ovcon if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 53 of the

Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner

Chilcott did not exercise its option, subject to certain risks and uncertainties associated with

making generic Ovcon commercially available.


**PLAINTIFF'S ALLEGATION**

54.     On May 6, 2004, Warner Chilcott exercised the exclusive license option
under the Final Agreement by paying Barr $19 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 54 of the

Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further

admits that Warner Chilcott paid Barr $19 million upon the exercise of the option.  Warner

Chilcott respectfully refers the Court to the option agreement for the terms thereof.


**PLAINTIFF'S ALLEGATION**

55.     Warner Chilcott did not begin purchasing Ovcon supply from Barr at that
time, but instead continued to purchase Ovcon supply solely from Bristol-Myers Squibb Co.,
until about May 2005.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 55 of the

Complaint, except admits that product under Barr's ANDA could not be sold immediately upon

FDA approval, and further admits that Warner Chilcott purchased Ovcon from BMS.

**PLAINTIFF'S ALLEGATION**

56.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.  Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER**

Warner Chilcott denies each and every allegation contained in the first sentence of Paragraph 56 of the Complaint.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 56 of the Complaint, except denies that Barr had the capability to market a generic Ovcon shortly after receiving final FDA approval.

**PLAINTIFF'S ALLEGATION**

57.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon and led to a significant reduction in the average price Plaintiff and the Class paid for Ovcon molecule products.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of the Complaint, except denies that entry of a Barr generic Ovcon would have led to a significant reduction in the average price purchasers paid for Ovcon products.

**PLAINTIFF'S ALLEGATION**

58.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 58 of the Complaint.

**PLAINTIFF'S ALLEGATION**

59.    As of the date of this Complaint, Barr remains the only company that has received approval from the FDA to make and sell an AB-rated generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 59 of the Complaint.

**PLAINTIFF'S ALLEGATION**

60.    On November 7, 2005, the FTC filed a complaint against Defendants in the United States District Court for the District of Columbia, seeking to permanently enjoin Defendants from continuing to engage in their unlawful conduct.  Twenty-one states and the District of Columbia have filed a related complaint in federal court.

**ANSWER**

Warner Chilcott admits that on or about November 7, 2005 the FTC, some states, and the District of Columbia filed complaints against Warner Chilcott in the United States District Court for the District of Columbia.  Warner Chilcott denies that it has engaged in any unlawful conduct, and further denies that Plaintiffs in those actions are entitled to any relief whatsoever.

**PLAINTIFF'S ALLEGATION**

61.    At all material times, Ovcon was marketed by Warner Chilcott, shipped across state lines and sold to customers located outside the state of its manufacture.

**ANSWER**

Paragraph 61 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 of the Complaint, except admits that Ovcon is sold in the United States.

**PLAINTIFF'S ALLEGATION**

62. During the relevant time period, in connection with the purchase and sale of Ovcon, monies as well as contracts, bills and other forms of business communication and transactions were transmitted in a continuous and uninterrupted flow across state lines.

**ANSWER**

Paragraph 62 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 62 of the Complaint.

**PLAINTIFF'S ALLEGATION**

63. During the relevant time period, various devices were used to effectuate the conspiracy alleged herein, including the United States mail, interstate and foreign travel, and interstate and foreign telephone commerce. The activities of Defendants as charged in this complaint were within the flow of, and have substantially affected, interstate commerce.

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 63 of the Complaint.

**PLAINTIFF'S ALLEGATION**

64. Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

(a) The sales of Ovcon and any AB-rated generic equivalent have been allocated between Warner Chilcott and Barr, with a portion of Warner Chilcott's supra-competitive profits being allocated to Barr, in exchange for its agreement not to compete with Warner Chilcott;

(b) Prices for Ovcon and any AB-rated generic equivalent have been fixed, raised, maintained or stabilized at artificially high and non-competitive levels;

(c) Class members have been deprived of the benefits of free and open competition in their purchases, including the ability to purchase a competing, less expensive generic version of Ovcon; and

(d) Competition in the production and sale of Ovcon and any AB-rated generic equivalent has been restrained, suppressed and eliminated.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 64 of the Complaint, including sub-parts (a), (b), (c), and (d).

**PLAINTIFF'S ALLEGATION**

65. During the relevant period, members of the Class purchased substantial amounts of Ovcon. As a result of the illegal conduct of Defendants, members of the Class were compelled to pay, and did pay, artificially inflated prices for the Ovcon molecule. Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal Agreement, combination or conspiracy alleged herein, because Class members were deprived of the opportunity to: (1) pay lower prices for the generic version of Ovcon; (2) pay lower prices for their Ovcon molecule requirements by switching more of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand drug Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 65 of the Complaint, and denies the remaining allegations contained in Paragraph 65 of the Complaint.

**PLAINTIFF'S ALLEGATION**

66.    Plaintiff incorporates by reference the allegations set forth above, as if fully set forth herein.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 65 of the Complaint as if fully set forth herein.

**PLAINTIFF'S ALLEGATION**

67.    Beginning on or about September 10, 2003, when Defendants executed their letter of intent, Defendants engaged in a continuing agreement, combination or conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 67 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 67 of the Complaint.

**PLAINTIFF'S ALLEGATION**

68.    The Defendants' Agreement has included concerted action and undertakings between Defendants for the purpose and effect of (1) eliminating competition between Warner Chilcott and Barr in the sale of Ovcon molecule products; (2) allocating a portion of Warner Chilcott's supra-competitive profits in the sale of Ovcon to Barr in exchange

for Barr's agreement not to sell its generic version of Ovcon for five years; (3) fixing, raising, maintaining, or stabilizing the price of branded Ovcon at supra-competitive levels; and (4) depriving Plaintiff and the Class of the ability to purchase cheaper competitive generic versions of Ovcon.

**ANSWER**

Paragraph 68 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 68 of the Complaint.

**PLAINTIFF'S ALLEGATION**

69.    For the purpose of formulating and effectuating their contract, combination or conspiracy, Defendants performed various acts, as alleged herein, including the following:

(a)    entering into an illegal Agreement by which Barr agreed not to sell its generic Ovcon in U.S. commerce in exchange for sharing Warner Chilcott's supra-competitive profits, and

(b)    depriving direct purchasers of the ability to purchase Ovcon generic equivalents, at true competitive prices,

(c)    causing Class members to pay more for Ovcon molecule products than they otherwise would have.

**ANSWER**

Paragraph 69 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 69 of the Complaint, including sub-parts (a), (b), and (c).

**PLAINTIFF'S ALLEGATION**

70.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 70 of the Complaint.

**PLAINTIFF'S ALLEGATION**

71.    Defendants' illegal contract, combination or conspiracy to prevent the introduction into the U.S. marketplace of a competing generic version of Ovcon resulted in Plaintiff and the Class paying more than they would have paid for Ovcon and its AB-rated generic equivalents, absent Defendants' illegal conduct.

**ANSWER**

Paragraph 71 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 71 of the Complaint.

**PLAINTIFF'S ALLEGATION**

72.    Defendants' contract, combination or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 72 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 72 of the Complaint.

**PLAINTIFF'S ALLEGATION**

73.    In the alternative, Defendants' contract, combination or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under a "Quick Look" analysis and/or under "Rule of Reason" analysis, because its purpose and effect was to unreasonably restrain competition in the United States market for Ovcon and its generic equivalent.

**ANSWER**

Paragraph 73 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 73 of the Complaint.

**PLAINTIFF'S ALLEGATION**

74.    To the extent the law requires it, the relevant geographic market is the United States and its territories.

**ANSWER**

Paragraph 74 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 74 of the Complaint.

**PLAINTIFF'S ALLEGATION**

75.    To the extent the law requires it, the relevant product market is Ovcon and its AB-rated generic equivalents (the Ovcon molecule). Defendants had substantial market power in the relevant market.

**ANSWER**

Paragraph 75 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 75 of the Complaint.

**PLAINTIFF'S ALLEGATION**

76.    Plaintiff demands trial by jury on all issues so triable.

**ANSWER**

Warner Chilcott hereby demands a trial by jury on all claims so triable.


**PLAINTIFF'S ALLEGATION**

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully prays that:

(a)     The Court determine that this action may be maintained as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

(b)     Each Class member recover three-fold the damages determined to have been sustained by each of them; and that joint and several judgment be entered against each defendant in favor of the Class;

(c)     The Class recover its costs of suit, including reasonable attorneys' fees as provided by law;

(d)     The Class be granted such other relief as the Court determines to be just.

**ANSWER**

WHEREFORE, Warner Chilcott denies that this suit can be litigated as a class action, denies that Plaintiff is entitled to any relief whatsoever and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate.  Furthermore, Warner Chilcott denies every allegation contained in the Complaint not specifically herein admitted.

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiff.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
### (Justification)

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

## SIXTH AFFIRMATIVE DEFENSE
### (Preservation of Business)

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Injury to Competition)

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

## EIGHTH AFFIRMATIVE DEFENSE
### (Pro-Competitive Effects)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's alleged actions have pro-competitive effects that benefit competition as a whole in any relevant market.  Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

## NINTH AFFIRMATIVE DEFENSE
### (No Consumer Harm)

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed consumers.

## TENTH AFFIRMATIVE DEFENSE
### (No Harm to Plaintiff)

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Knowledge or Intent)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner Chilcott could not have known that its actions might illegally restrain trade.


## TWELFTH AFFIRMATIVE DEFENSE
### (No Willful, Flagrant, or Unconscionable Act)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant or unconscionable act.


## THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith Reliance)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.


## FOURTEENTH AFFIRMATIVE DEFENSE
### (No Notice)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.


## FIFTEENTH AFFIRMATIVE DEFENSE
### (No Concealment)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

## SIXTEENTH AFFIRMATIVE DEFENSE
**(Failure to Identify Appropriate Markets)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

## SEVENTEENTH AFFIRMATIVE DEFENSE
**(No Market Power)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has and had no market power.

## EIGHTEENTH AFFIRMATIVE DEFENSE
**(Causation)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's actions were not the proximate cause in fact of Plaintiff's alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
**(Failure to Mitigate Damages)**

To the extent that Plaintiff has failed to mitigate, minimize or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
**(Lawful Conduct)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to Plaintiff.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Not Maintainable as a Class Action)

Plaintiff's claims are barred, in whole or in part, because the action against

Warner Chilcott is not properly maintained as a class action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered

antitrust injury.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Pattern or Practice)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not

engage in any pattern or practice of illegal activity.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiff's claims are barred, in whole or in part, because Plaintiff does not have

standing.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Failure to Plead a Proper Party)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to

plead a proper party.

## <u>TWENTY-SIXTH AFFIRMATIVE DEFENSE</u>
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

Wherefore, Warner Chilcott prays as follows:

1.     That the Court enter judgment for Warner Chilcott on all counts;

2.     That the Court award Warner Chilcott reasonable costs and expenses including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

December 21, 2005                          Respectfully submitted,


                              By:     /s/
                                   _____
                                   Kevin J. Arquit, D.C. Bar #438511
                                   Charles E. Koob, *pro hac vice* pending
                                   SIMPSON THACHER & BARTLETT LLP
                                   425 Lexington Avenue
                                   New York, New York 10017
                                   (212) 455-2000

                                   *Counsel for Warner Chilcott Defendants*